Whenever you're ready. I'm sorry, Your Honor, it's actually Ms. Henry who goes first. Oh, I was assuming you were going first since your client is the petitioner. No, we are petitioning for enforcement, but under the federal rules of appellate procedure, the board always goes second. I apologize for the confusion. No, my fault. Ms. Henry, is that agreeable to you? Yes, that is fine. I definitely saw that the court can order otherwise, but I'm happy to begin. All right. Please go ahead, then. Okay. May it please the Court, Amber Henry, on behalf of Respondent Ampersand Publishing, LLC. There are very few issues, actually, in this petition to enforce. By and large, Respondent does not challenge most of the board's petition. What we do challenge are two specific things that I wanted to bring to your attention. The first one is whether the award of attorney's fees are available from the board and whether they can award that. I think everyone agrees that there is no specific case addressing whether attorney's fees in this context constitute bargaining expenses. How do you read the D.C. Circuit cases? Do you read them as holding that the board lacks authority to order reimbursement of legal fees regardless of the context in which they've been incurred? I do. I would take the position, since they're a creature of statute, that they are only authorized to award certain remedies. They only have powers to do certain remedies. So I would say that they are not entitled to attorney's fees, period. However, I don't even know that we need to reach that issue here because, specifically, there's no question that at the time that these attorney's fees were incurred, there were already charges brought by the union against Respondent Ampersand Publishing. Therefore, we were still at least in quasi-adversarial proceedings at that point in time. Most importantly is the attorney's testimony. He has testified that he was hired to give legal advice on bargaining, legal advice as to how that would match up with the unfair practices law, legal advice as to the proposals that were received and whether that complied with things, and then actually took that information that he learned at these bargaining and used that information to then do additional unfair practices charges. So I don't think we have to reach the decision of whether or not you can award attorney's fees in a private contractual context, which I know is what the NLRB urges, because I don't think we're in that setting. I think factually we were under adversarial proceedings at that time. But I would suggest that both Camelot and HTH stand for the proposition that attorney's fees are not available recovery. And I understand that they want to call them bargaining costs, and they do, repeatedly. But there is no dispute that whether you call it a bargaining cost or not, underlying is attorney's fees. They hired an outside law firm who, you know, kept records of his time, billed that to the client, and he's testified himself. It was for legal advice to help them with the unfair practices labor charges to help with bargaining. You referred to Camelot. Camelot Terrace says, does it not, that the board lacks authority to require reimbursement of litigation costs? That is correct. That is correct. So Camelot stands in, like, it's very, it's actually very specific. The companies in that case specifically said that the board didn't have statutory or an authority to grant attorney's fees, and the court said, we agree with that. We cannot do that. The court said that the board lacked the authority to require reimbursement of litigation costs incurred during board proceedings. Isn't that right? That is correct, Your Honor. However, again, it follows, though, that no matter if they're trying to call it bargaining costs, he was providing legal advice. There's no, you know, there's nothing in any of the case laws that I've found, and LRB doesn't cite to any case law either, that you can take attorney's fees and transform them into something else to avoid the application that you're not entitled to those types of fees, and they were involved. That's not what his contemporaneously made billing records show, though, is it? That he was, yes. His records, if you start looking at, and this is at the SER 190, excuse me, 295. This is when we get into the actual billing records. This was General Counsel's Exhibit 300. If you look at that, there were actually many things, and you can actually see from those bills, he was doing both at the same time. He was doing litigation role. Now, they try to make it two distinct things, and that's what the LRB calls it. That was my point. Isn't that what the records show, that there appears to have been contemporaneously a recordation of time spent on bargaining versus litigation-related time? Yes, I think that that is accurate. However, I don't think that that changes the matter because we were in adversary proceeding at that point in time, and I don't believe that there is any authority to award attorney fees no matter what you call them at that point in time. I agree with you on that. Let me just ask you a question there. You say you were in adversary proceedings. How does that differ, or how is that distinct, or why is that so related to, I guess maybe it's a better question, to bargaining? Well, I guess in Camelot, the court had indicated that they were not ruling upon and did not reach the decision whether private contractual negotiations could be included in bargaining costs. But what they didn't say, and I apologize, I'm just looking over at my case, but what they didn't say is that you could award the attorney's fees in the first place. You cannot do that. That's beyond the power of the board to do that, to award attorney's fees. Now, I understand that there's supposed to be a distinction, but that's when the court said you couldn't possibly do it. Camelot's Harris says there is a distinction, doesn't it? It actually doesn't. It says that, and this is the citation that I believe NLRB relied upon as well, and it cites to page, let me just, it goes to, we reject this approach because the companies make broad appeals to tradition, noticeably absent from their brief, as any case suggesting the American rule extends beyond the context of litigation or quasi-judicial adversarial proceedings. But it does not say that that would be recoverable costs. It simply says that there's no case law specifically saying whether or not they can do that. And so since it makes the reference to quasi-judicial proceedings, we certainly were in those at that point in time. There's no dispute about that. So I think ultimately they're trying to take bargaining costs to involve, but if you look down at the core of it, it's still attorney's fees. No matter how you look at it, and we're involved in an adversarial proceeding. I thought Camelot Harris said that bargaining costs are remedial and within the board's statutory authority to impose. Yes, that is accurate. They have broad authority to effectuate the purposes of the act. That is absolutely true. But at the same time, Camelot and then HTH Cork discuss the fact that attorney's fees falls outside of that. And therefore, yes, I'm sorry. No, it sounds as if you're advocating basically a bright line rule, that whenever an attorney is involved in billing time to the NLRB, then it is not recoverable, regardless of what they're doing, regardless of whether they're taking depositions or preparing witnesses or if they're writing legal memos and providing advice. I think that a bright line rule would be helpful in this scenario. I don't know that we need that here because, again, they were in adversarial proceedings. So you're correct in the sense that I think that the statute is clear that attorney's fees was not an available remedy. It's not in there. They don't say that it was. But to your point, I'm sorry, did I interrupt you? Well, I'm just trying to think of an actual scenario in which they would be bargaining but not in adversarial proceedings. Does that happen? I don't know enough about these cases. Are there instances where they have informal discussions and bargaining before there are some charges filed? Yes, that does occur. So in your view, that's the turning point. Once there are charges brought, then it doesn't matter what they're doing. It has to be considered litigation. I believe that it's a litigation expense and attorney's fees at that point in time, yes. So a lawyer can't carefully document how he spends his time at that point? That is, to show or to keep track that he's advising the union or negotiating tactics or negotiating points, whatever it might be, or even be in the bargaining room with the bargainers, the participants. In your view, that's impossible. As long as he's there collecting a fee, he can't get it. For his legal advice, yes, that's correct. When he's providing legal advice and attorney's fees in that specific scenario, then yes. Because there's no… How about if the lawyer is in the bargaining room? I'm sorry. How about if the lawyer is in the room where they're doing the bargaining? He's there because he's providing the legal advice and attorney's fees. So I don't think that that matters. Okay. The only other issue that I wanted to address besides that, and this is just very briefly, I'll note it because I see I only have a couple of minutes remaining, is the mitigation. And I just quickly want to point out that the only other issue is to back pay. There were certain issues with two employees, one specifically on the record said, I stopped looking for a job. I wasn't looking for any job. And this is Mr. Miniards. And he notably admitted that he took a part-time freelance position, which obviously he is entitled to do, absolutely entitled to do, if he can't find another job. But at the same time, the law requires that someone look for substantially equivalent work. He admits, and none of the other cases that NLRB addressed, he admits that he just stopped working because he was happy with his SAG-AFTRA benefits, his pension, and so he didn't want to do that. There are case laws specifically saying that even if you have other sources of money, you still have to look for substantially equivalent work. Now, I understand that NLRB's position has been, well, there's no necessarily proof that there was substantially equivalent work, but what we do have is the evidence is he didn't look at all. So you couldn't possibly be meeting your standard to mitigate if you just stopped the job search completely and admitted that you would prefer, you're happy with working part-time as a freelance, and you don't want another job because you now have extra pension benefits. I understand that, and I understand that you are allowed to mitigate your damages. Help me here, counsel, if you would, please, because I don't understand or I don't think I understand exactly how the burden and any burden shifting here with respect to mitigation works. Certainly. So the burden initially is for the NLRB to show the gross amounts and everything like that. It then shifts to Ampersand Publishing to show why it should be decreased or anything else. So those are the burdens. Now, the burden, though, can be satisfied by his own affirmative testimony that he did not look for any other job and that the job that he did take was a part-time freelance position and he never looked for equivalent job work. Well, in that case, there's no burden shifting. His showing has simply fallen short, right? Correct. That is correct. And I will reserve my last minute and 50 minutes unless I can answer any additional questions for you guys. All right, thank you. All right, Mr. Sauter. You're on mute still. Yes, I apologize. Good morning. May it please the Court. My name is Greg Sauter. I'm appearing on behalf of the National Labor Relations Board today. Your Honors, this is what we at the Board call a compliance case, and as we explained, it's akin to the damages stage of a civil trial. In the prior proceeding, in this case, the Board found that Ampersand committed multiple serious violations of the National Labor Relations Act, and the D.C. Circuit enforced the Board's order in full. This means that Ampersand's liability, as we stand today, Ampersand's liability for the underlying unfair labor practices is not up for debate, and the same goes for Ampersand's obligation to compensate employees and the union for its actions. Am I correct that your reading of the D.C. Circuit cases is that all bargaining expenses, even if paid to lawyers for legal advice, are recoverable to remedy bad faith bargaining? Yes, that is our position, Your Honor. Camelot Terrace states, the Camelot Terrace draws a clear distinction between attorneys' fees incurred in litigation, on one hand, and incurred for bargaining on the other. And what the court held is that the American rule does not apply in the bargaining context. So it doesn't matter that an attorney is giving legal advice. What matters is what is he or she working on. And in this case, Mr. Gottlieb kept detailed records that, as he testified, he entered his time charges contemporaneously on almost a daily basis, otherwise the following day, with a specific matter number identifying what he worked on and that there were other matter numbers for other assignments he may be working on, such as unfair labor practices, organizing, and other things like that. And I would actually direct the court to page 35 of the board's brief, which cites portions of the excerpts of record, specifically transcript pages, excerpts of record 758, 759, 768, 769, and 862 and 63, where Mr. Gottlieb testified that he would, based on what he was doing at that point, he would attribute a different matter number. And he did say at some point, you know, I have to consider what is the main thing I'm doing. If something else comes up incidentally, I'll answer that question, but I have to consider, am I doing bargaining here, and are we just saying, you know, if this goes south, we may have to file an unfair labor practice? Or am I doing litigation and just mentioning bargaining incidentally? And that's how Mr. Gottlieb divided his time charges, and I think it's eminently reasonable. You can't ask a practitioner to, you know, to go to split hairs on something like that. So I understood, Ms. Henry, to say that all of these charges were incurred after, all of the attorney's fees were incurred after the board had brought charges, so that the parties were in an adversarial position, and so that this wouldn't really be considered bargaining, it would be considered litigation. But it sounds as what you're describing as the attorney was using different file numbers and billing time before charges were brought? I'm confused as to what actually happened. So I don't know exactly what the sequence of events is. Ms. Henry is correct that there are times when bargaining goes well and then it hits a snag, and at that point you file unfair labor practice charges. With Ampersand being the employer that it is, and I think that you may have gotten a certain sense of it based on our brief and the board's unfair labor practice decision, a lot of, there were a lot of charges filed, and probably fairly early on. So I'm sure that if Mr. Gottlieb wasn't working the whole time while there were already charges filed, he certainly was for part of the time. But as, I forget who mentioned this, but when Mr. Gottlieb is in a room, a bargaining room, the fact that there is litigation occurring in the background, that has nothing to do with the here and now, what he's focused on, what he's doing. At that point, he's giving advice to the union on bargaining. The same thing when he's in his office considering an employer proposal and writing feedback or suggestions to the union about how to respond. But you're describing providing advice on bargaining in the context of resolving an adversarial proceeding. So it seems akin to a settlement conference when litigation is pending. I mean, you described it as similar to a civil actions, the damages phase. So a lawsuit's been filed. There's been an initial determination or an agreement on liability, and the parties go to a settlement conference. The lawyers are there negotiating. How is the negotiations that you call bargaining different? Why is that not a litigation expense? I understand, Your Honor. Let me just clarify something. I think that was unclear. The expenses that we are talking about, those happened at the time the unfair labor practices occurred, before the board made its determination of liability. Those happened from 2007 to 2009 until bargaining basically fell apart. Okay, so you're clarifying your previous answer or changing it. No, I'm not. Just to be clear, I'm not changing it. The bargaining fees that we are discussing here, those occurred before the board's decision on the ULP proceeding. Once that decision was enforced, we are now here in a new phase of the proceeding, the compliance stage, and that is akin to the remedial stage of a civil trial. But we're not arguing over Mr. Gottlieb's time charges during this stage of the proceeding. We are only arguing over his charges back in 2007 to 2009 when there was actually still bargaining going on and before the board found that Ampersand had violated the act by its bad faith bargaining. And the award, the ultimate award here, is just for that period of time? Yes, yes. The only thing that extends beyond that period of time is interest, but otherwise all of the award there is. For example, the merit pay increases, the board found that Ampersand unlawfully discontinued its merit pay program, its merit pay increase program, but the board only ordered Ampersand to compensate employees for those increases that they would have received between 2007 and 2009, not thereafter. Thereafter, it's only interest. Does that clarify it a little bit? Thank you. Okay. As I mentioned, there's a lot of, as we said in our brief, there's a lot of Ampersand's challenges here that are waived, but regardless, all of them lack merit. And because there's a lot of issues in this case, I would appreciate if the court has any specific questions, please do ask them. Otherwise, I will just go over sort of from a bird's eye view the various issues that came up and the board's rulings, the board's decisions. And if you have any questions at that time, feel free to interrupt me. Ampersand's claims fall into roughly three categories. There was, as I just mentioned, the unlawful discontinuance of its merit pay increase program and the transfer of unit work to non-bargaining unit employees. Then there was the issue of the back pay owed to Mr. Moran and Minards, I also don't know how it's pronounced. And the union's attorney's fees. So discussing the first category, the back pay owed for wage increase and work transfer violation. As the court will recall, the board granted summary judgment on those issues because Ampersand's answer to the compliance specification didn't satisfy the board's specificity requirements. And Ampersand has not challenged the board's granting of summary judgment. Instead, it claims it should have been allowed to, it only claims it should have been allowed to offer mitigation evidence at the hearing on those issues. And there are two reasons the court should reject that claim. First, because it's made in a single sentence without any reference to governing law or the record, and therefore it should be deemed waived. But also because Ampersand's claims are either attempts to relitigate its liability, which it can't do at this point, or they depend on evidence that was in Ampersand's possession and that it failed to produce with its answer to the specification. So either way, Ampersand would not have been allowed to make those arguments at the hearing. The second category of claims, and here we're going to touch on something that Ms. Henry raised, that pertains to the back pay Ampersand owes to Dennis Moran and Richard Minard. And speaking specifically of the burden in this case, the general counsel's initial burden is to prove that the data in the compliance specification and the amounts are reasonable, not exact, just reasonable. The burden then shifts to the employer, Ampersand in this case, to provide mitigating evidence to show that its liability would have actually been lower. Now, within that, Ampersand has a further burden, and there are various ways to articulate it, but if Ampersand is claiming that Minards and Moran failed to make reasonable efforts to look for, to mitigate their losses as they are required, Ampersand has to, in order to prevail on that, Ampersand has to prove two things. First, that there were substantially equivalent jobs available in the relevant geographical area, the Santa Barbara area. And second, that the employees did not make reasonable efforts to obtain those jobs. In this case, Ampersand failed to produce evidence as to either prompt. All it did was make conclusory, unsubstantiated assertions, and therefore it failed to carry its burden. And going specifically to Mr. Minard, Mr. Minard, within three days of his getting laid off, he found a job writing essentially the same column that he was writing at the Santa Barbara News Press. However, it was paid less. He was an independent contractor. The board found that Mr. Minard's job was substantially equivalent to the one he had at the Santa Barbara News Press. Under board law, if an employee finds a substantially equivalent job, even if it pays less, the employee is not required to make additional efforts to mitigate his damages. What matters is that he finds a job that he is capable of doing and enjoys and that he is able to make a living in that situation. Now, just to push this a little further, the board found here, as I said, that the two jobs were substantially equivalent. Now, Ampersand could have made an argument, which I don't think it really did here, that because Mr. Minard's job paid significantly less, it actually wasn't substantially equivalent. But even if Ampersand were to prevail in that claim, it would still bear the burden to show that there were other jobs out there that Mr. Minard could have gone for, other substantially equivalent jobs, and that he failed to do so. Ampersand can't just rely on Minard's testimony that he stopped looking after he got his Screen Actors Guild benefit. The burden is on Ampersand to show that he fell short of his responsibility. Could I ask you to turn, and you may be going there now, but to the issue with respect to the reimbursement for Mr. Caruso's salary, who testified he would have been paid the same no matter what he was working on? Mm-hmm. So how is that recoverable? Actually, Ampersand does not dispute this. Employee salaries are reimbursable bargaining expenses. There is a case law that we cite on this point. I can try and look at the page specifically, but there is no dispute about that. What Ampersand is saying, for some reason, is that because the union was going to pay Caruso regardless, then somehow the union didn't incur those losses. But it makes no difference if a negotiator is a salaried employee like Caruso or if he's an independent contractor like Gottlieb. In either case, the result is the same. The union loses money because of Ampersand's bad faith bargaining tactics. And as Caruso testified without contradiction, if he hadn't been wasting his time in Santa Barbara being strung along by Ampersand, he would have been doing other work for the union, and the union would have been getting its bang for Mr. Caruso's buck, if you will. The problem was that he was stuck there, because the union was making a good faith effort to try and bargain with Ampersand and not realizing at the time that Ampersand had no intention of ever coming to an agreement. Does that answer your Honour's question? Yes, thank you. Okay. And the last issue, I don't know that you have any questions about that, but it concerns the travel expenses for which Ampersand, the union, had shredded certain receipts. At the hearing, the union's accountant testified that when Mr. Caruso filed his expense report, the accounting department went over each line item, putting a checkmark next to them, for the ones where Caruso had also submitted a receipt. And all of those expense reports were introduced into evidence at the hearing. So Ampersand can't claim it was prejudiced by the destruction of the original receipts, because there were other contemporaneous business records showing that the union actually incurred those expenses. And now I see my time is up. I'd like to conclude just by saying, Your Honours, the unfair labor practices in this case occurred at this point over 15 years ago, and there are a lot of Ampersand's employees and former employees who are hoping that after today, they will be one step closer to obtaining the compensation that they are owed after their statutory rights were violated. And on that note, I will end and say that we respectfully request that the court enforce the board's order in full. Thank you very much. Thank you. Ms. Henry, you have almost two minutes. Thank you. I appreciate it. I will actually briefly just address, again, the litigation costs. And I want to make clear, because we've talked about Camelot a lot, and fortunately it's a very short opinion, but it does not hold, as the NLRB suggests, that bargaining expenses can include attorney's fees, as long as they're not in a litigation context. That's simply not the holding in that case. It does not make that holding. And so I just want to be clear that every time that that's the citation, there is no case, actually, that says whether or not attorney's fees can be recoverable as bargaining expenses. That has not been determined. But we have the opposite, that attorney's fees are not a recoverable expense under the Act. So I just want to make that distinction clear. But with that, I am open to any questions that you further may have, or I will submit. All right. I think we have our questions answered. Thank you both for your arguments. They were very helpful, and this case is under submission.  Thank you.
judges: PAEZ, UNKNOWN, BADE